UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BERNADETTE F.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. 3:18-CV-05671-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when she failed to provide specific, legitimate reasons supported by substantial evidence for rejecting medical opinion evidence from Dr. Erum Khaleeq, M.D. and other examining

physicians. Had the ALJ properly considered these medical opinions, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Social Security Commissioner ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

This case has a lengthy procedural history. On December 13, 2012, Plaintiff filed applications for SSI and DIB, alleging disability as of June 1, 2012. *See* Dkt. 10, Administrative Record ("AR") 251-257, 258-264. Her applications were denied upon initial administrative review and on reconsideration. *See* AR 148-154, 155-162, 165-169, 170-177. A hearing was held before ALJ Cynthia D. Rosa on February 5, 2014. AR 54-85. In a decision dated May 6, 2014, the ALJ determined Plaintiff to be not disabled. AR 19-48. On November 20, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *See* AR 1-7. Plaintiff appealed ALJ Rosa's decision to the United States District Court for the Western District of Washington ("Court"), which reversed and remanded the decision on August 3, 2016. *See* AR 763-781. On December 7, 2016, the Appeals Council issued a remand order vacating ALJ Rosa's decision and remanding the case for further proceedings consistent with the Court's order.[1] AR 782-786.

---

[1] Plaintiff filed additional claims for SSI and DIB on January 14, 2016. These claims were denied initially and on reconsideration. AR 905-908, 911-915, 916-922. In its remand order of December 7, 2016, the Appeals Council noted that its action rendered Plaintiff's subsequent claims duplicative or caused them to involve an overlapping period of time and ordered the ALJ to consolidate the claims and issue a new decision based on the consolidated record. AR 784.

On January 23, 2018, ALJ Rebecca L. Jones[2] held the present hearing. AR 663-720. On May 2, 2018, the ALJ determined Plaintiff to not be disabled. AR 615-654. The ALJ's May 2, 2018 decision is the final decision of the Commissioner.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to properly assess: (1) opinion evidence from Drs. Ruddell, Sanchez, Khaleeq, Wingate, Lewis, Thompson, and Trowbridge; and (2) Plaintiff's subjective claims. Dkt. 17, pp. 1-19. Plaintiff requests the Court remand her claims for an award of benefits due to the ALJ's alleged errors. *Id.* at p. 18.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I.     Whether the ALJ properly considered the medical opinion evidence.**

Plaintiff argues that the ALJ failed to properly consider opinion evidence from Drs. Ruddell, Sanchez, Khaleeq, Wingate, Lewis, Thompson, and Trowbridge. Dkt. 17, pp. 1-17.

In assessing an acceptable medical source – such as a medical doctor – the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be

---

[2] When stating "the ALJ" or "the ALJ's decision" throughout this Order, the Court is referring to ALJ Jones and her decision of May 2, 2018.

rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A. <u>Dr. Ruddell and Dr. Sanchez</u>

Plaintiff maintains that the ALJ failed to provide sufficient reasons for rejecting portions of an opinion from Dr. Ruddell. Dkt. 17, pp. 4-8. Plaintiff further maintains that the ALJ did not provide sufficient reasons for rejecting an opinion from Dr. Sanchez, who based her opinion on a review of Dr. Ruddell's evaluation. Dkt. 17, p. 9.

Dr. Ruddell conducted a psychological/psychiatric evaluation of Plaintiff in November 2016. AR 1192-1196. As part of her evaluation, Dr. Ruddell conducted a clinical interview and a mental status examination. *See* AR 1192-1196. Based on this evaluation, Dr. Ruddell opined that Plaintiff had marked limitations in her ability to adapt to changes in a routine work setting. AR 1194. Dr. Ruddell also determined that Plaintiff had marked limitations in maintaining appropriate behavior in a work setting, completing a normal work day and work week without interruptions from psychologically based symptoms, and setting realistic goals and planning independently. AR 1194. Dr. Ruddell further opined that Plaintiff had severe limitations in her ability to learn new tasks. AR 1194.

In December 2016, Dr. Sanchez performed a review of the medical evidence for the Washington State Department of Social & Health Services. AR 1197-1199. Dr. Sanchez reviewed the results of Dr. Ruddell's November 2016 evaluation of Plaintiff, and re-affirmed Dr.

Ruddell's findings concerning Plaintiff's marked and severe work-related mental limitations. AR 1198-1199.

The ALJ gave little weight to the opinions of Dr. Ruddell and Dr. Sanchez regarding Plaintiff's marked and severe limitations, reasoning that: (1) the opinions were not consistent with the record as a whole; and (2) appeared to be based largely on Plaintiff's self-reports. AR 651.

B. <u>Other Examining Physicians</u>

Plaintiff further contends that the ALJ improperly rejected the opinions of examining physicians Khaleeq, Wingate, Lewis, Thompson, and Trowbridge, all of whom examined Plaintiff before this Court's August 2016 remand order.[3] Dkt. 17, pp. 10-17.

Dr. Brett Trowbridge, Ph.D. performed a psychological/psychiatric evaluation of Plaintiff in October 2012. AR 376-391. Dr. Trowbridge's evaluation consisted of a clinical interview, a mental status examination, and trail making exercises. *See* AR 376-391. During the mental status examination, Dr. Trowbridge observed that Plaintiff's speech was anxious and rapid, her mood was depressed, and her affect was flat. AR 379. Dr. Trowbridge also observed that Plaintiff was well groomed and cooperative, and noted that she was within normal limits on thought process and content, orientation, perception, memory, fund of knowledge abstract thought, and insight and judgment. AR 379. Dr. Trowbridge noted that Plaintiff was unable to do simple subtraction problems. AR 377. Dr. Trowbridge found that due to traumatic events in Plaintiff's past, she would have marked, daily difficulties with maintaining persistence at work. AR 377. Dr.

---

[3] For purposes of clarity, these opinions are discussed in chronological order, rather than the order in which they appear in Plaintiff's brief.

Trowbridge opined that she had obvious concentration issues, and after conducting a Rey Fifteen Item Test, found that she was not malingering. AR 377, 379, 386.

Dr. Trowbridge assessed Plaintiff as having a range of marked limitations in performing work-related activities. Specifically, Dr. Trowbridge opined that Plaintiff had marked limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision. AR 378. Dr. Trowbridge further assessed Plaintiff as having marked limitations in performing routine tasks without special supervision, being aware of normal hazards and taking appropriate precautions, and communicating and performing effectively in a work setting. AR 378. Dr. Trowbridge also found that Plaintiff would have marked limitations completing a normal work day and work week without interruption from psychologically based symptoms and in setting realistic goals and planning independently. AR 378.

The ALJ gave little weight to Dr. Trowbridge's opinion. The ALJ reasoned that: (1) after Dr. Trowbridge's examination, Plaintiff's mental symptoms "improved significantly" with treatment, (2) Plaintiff's activities of daily living were inconsistent with the marked limitations assessed by Dr. Trowbridge, (3) Dr. Trowbridge's opinion was based on a one-time examination of Plaintiff, and (4) the limitations assessed by Dr. Trowbridge were not consistent with the results of his own examination. AR 646-647.

Dr. Loreli Thompson, Ph.D. performed a psychological diagnostic evaluation of Plaintiff in March 2013. AR 421-427. Dr. Thompson's evaluation consisted of a review of the available records (including Dr. Trowbridge's evaluation), a clinical interview, and a mental status evaluation. AR 421-427. Dr. Thompson noted that Plaintiff was a reliable historian and stated that there were no inconsistencies in Plaintiff's statements and no evidence that Plaintiff was

exaggerating symptoms. AR 421, 425. Based on the results of the mental status examination, Dr. Thompson concluded that Plaintiff's ability to reason was "variable" due to her limited ability to interpret proverbs and similarities. AR 426. Dr. Thompson noted that Plaintiff demonstrated poor judgment when she responded inappropriately to a question about what she would do if she discovered smoke in a crowded theater. AR 426. Dr. Thompson assessed Plaintiff's ability to understand as "variable" noting that Plaintiff would have difficulty performing complex instructions. AR 426. Dr. Thompson assessed Plaintiff's memory functions as poor and found that her ability to sustain concentration and persistence was inconsistent. AR 426. Dr. Thompson noted that Plaintiff would be unable to sustain reading for 60 minutes, and that her ability to adapt to routine changes in a typical work setting was likely to be impacted by her psychiatric symptoms. AR 426.

The ALJ assigned little weight to Dr. Thompson's opinion, reasoning that: (1) it was difficult to translate Dr. Thompson's assessment of "variable" and "poor" performance into functional limitations that could be included in an RFC, (2) Dr. Thompson's opinion was based upon a one-time examination of Plaintiff, (3) Dr. Thompson's opinion was not consistent with the record as a whole, and (4) Plaintiff made inconsistent statements to Dr. Thompson, despite Dr. Thompson's statement that Plaintiff was a reliable historian.. AR 647.

Dr. Janis Lewis, Ph.D. conducted a psychological evaluation of Plaintiff on December 20, 2013. AR 550-562. Dr. Lewis' assessment consisted of a review of the available records (including treatment notes and the evaluations conducted by Dr. Trowbridge and Dr. Thompson), a clinical interview, a mental status evaluation, and a personal assessment inventory. During the mental status evaluation, Dr. Lewis observed that Plaintiff appeared "bewildered", cried at times, and had a "1,000 mile stare" when recounting past traumas. AR 558. Plaintiff was unable to

perform serial 3s or serial 7s and was unable to remember three words after five minutes. AR 558. Dr. Lewis did note some errors in the background information Plaintiff provided but administered the Rey Fifteen Item Test and stated that the results "did not support a finding of malingering." AR 559, 561.

Dr. Lewis opined that Plaintiff would find it difficult to maintain the focus necessary for even part time work and noted that Plaintiff's hypervigilance makes her a poor candidate for public employment. AR 561. Dr. Lewis further stated that Plaintiff had "low energy" and would likely return to her previous pattern of frequent workplace absences. AR 561. Dr. Lewis opined that Plaintiff would not catch careless errors and had a very low stress threshold "due to an accumulation of emotional, pain, and situational factors." AR 562.

The ALJ found that Dr. Lewis' opinion: (1) was inconsistent with the record, which showed improvement with treatment, (2) assigned little weight to Dr. Lewis' opinion that Plaintiff would be unable to sustain even part time work, stating that this assessment was inconsistent with the results of Dr. Lewis' own mental status examination, (3) gave little weight to Dr. Lewis' opinion that Plaintiff would return to her pattern of workplace absences, reasoning that this assessment was based solely on Plaintiff's subjective reports, (4) disagreed with Dr. Lewis' finding that Plaintiff would not catch careless errors, reasoning that Dr. Lewis' assessment was based solely on Plaintiff skipping one page of her personal assessment inventory due to inattention and suggested that Plaintiff might have deliberately skipped filling out the page, and (5) gave some weight to Dr. Lewis' opinion that Plaintiff had a low stress threshold, arguing that she had adequately accounted for Plaintiff's low stress tolerance when assessing the RFC. AR 648-649.

Dr. Terilee Wingate, Ph.D. conducted a psychological/psychiatric evaluation of Plaintiff in September 2014. AR 1093-1101. Dr. Wingate's assessment consisted of a clinical interview and a mental status examination. AR 1093-1101. Dr. Wingate assessed Plaintiff as having marked limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision. AR 1095. Dr. Wingate further assessed Plaintiff as having marked limitations in completing a normal work day and work week without interruptions from psychologically based symptoms and in setting realistic goals and planning independently. AR 1096.

The ALJ assigned partial weight to Dr. Wingate's opinion, finding that: (1) the mild to moderate work-related mental limitations were consistent with the record as a whole, but that the marked limitations she assessed were not consistent with the record, (2) Plaintiff's self-reported activities of daily living were not consistent with marked mental limitations, and (3) the marked limitations assessed by Dr. Wingate were not consistent with the results of his own mental status examination. AR 650.

Plaintiff next contends that the ALJ failed to provide specific and legitimate reasons for discounting the medical opinion of Dr. Khaleeq, who performed a psychological/psychiatric evaluation of Plaintiff in April 2016. Dkt. 17, pp. 9-11, AR 1168-1173. Dr. Khaleeq conducted a clinical interview and a mental status examination. AR 1168-1173. During the mental status examination, Plaintiff was depressed, socially reactive, and had memory problems. AR 1171. Based on his examination, Dr. Khaleeq concluded that Plaintiff could perform simple and repetitive tasks but might get distracted doing detailed and complex tasks. AR 1172. Dr. Khaleeq also noted that Plaintiff could accept instructions from supervisors and interact with coworkers and the public provided she was not suffering from symptoms of physical pain. AR 1172. Dr.

1  Khaleeq further opined that Plaintiff might have difficulty performing work activity on a normal

2  basis, would have difficulty tending to her personal care, and might have difficulty maintaining

3  workplace attendance due to agoraphobia. AR 1172. Dr. Khaleeq noted that the usual stressors

4  encountered in the workplace could further aggravate her psychiatric condition. AR 1173.

5  The ALJ assigned little weight to Dr. Khaleeq's opinion, finding that: (1) it was based "in

6  large part" on Plaintiff's "self-reported physical conditions and symptoms, which are outside Dr.

7  Khaleeq's expertise as a psychiatrist", (2) was inconsistent with Plaintiff's self-reported activities

8  of daily living, and (3) Plaintiff's unreliability as an accurate historian undermined Dr. Khaleeq's

9  ability to accurately assess the extent of Plaintiff's limitations. AR 651.

C. <u>Analysis</u>

11  Plaintiff contends that the ALJ did not provide specific, legitimate reasons for rejecting

12  the opinions of Dr. Ruddell and Dr. Sanchez. Dkt. 17, pp. 4-9. Plaintiff contends that the opinion

13  of Dr. Ruddell (and the opinion of Dr. Sanchez, which relies on the opinion of Dr. Ruddell) were

14  not inconsistent with the record. Dkt. 17, p. 6. Specifically, Plaintiff argues that Dr. Ruddell's

15  clinical findings and the limitations she assessed were consistent with the functional limitations

16  assessed by every other examining psychologist in the record. Dkt. 17, p. 6.

17  Plaintiff further contends that in assessing Plaintiff's mental limitations, the ALJ relied

18  exclusively on opinions from non-examining state agency consultants. Dkt. 17, p. 7. In assessing

19  Plaintiff's RFC, the ALJ assigned great weight to the opinions of State agency psychological

20  consultants Dr. Matthew Comrie, Psy.D. and Dr. John Robinson, Ph.D., who evaluated

21  Plaintiff's claims in 2013. AR 644. Dr. Comrie and Dr. Robinson submitted identical

22  assessments, finding that Plaintiff was able to understand and remember simple instructions, that

23  her concentration would "wax and wane" based on her alcohol consumption, that she would be

capable of routine, superficial interactions with co-workers and the public, and that she would require "predictable routine labor" due to her low stress tolerance. AR 93-95, 104-106, 121-123, 138-140. The ALJ found that Drs. Comrie and Robinson: (1) were experts in disability evaluation, (2) had the opportunity to review the longitudinal record, and (3) their opinions were generally consistent with record as a whole. AR 644.

The ALJ also gave great weight to the opinions of State agency psychological consultants Dr. Bruce Eather, Ph.D., and Dr. Diane Fligstein, Ph.D., who evaluated Plaintiff's re-filed claims in 2016. AR 643-644. Dr. Eather and Dr. Fligstein also assessed identical work-related mental limitations, concluding that Plaintiff was able to understand and recall simple one to three step instructions as well as familiar semi-complex instructions. AR 799-801, 815-817, 834-836, 850-852. Drs. Eather and Fligstein further assessed Plaintiff as being able to sustain attention and concentration for simple and semi-complex routine tasks for periods of up to two hours at a time and being able to complete a normal work day and work week. AR 799-801, 815-817, 834-836, 850-852. Both State agency consultants assessed Plaintiff as being able to perform work with no more than infrequent and superficial interaction with the general public, accept normal supervision, and work in proximity to co-workers, but not in close coordination. AR 799-801, 815-817, 834-836, 850-852. Both consultants also found that Plaintiff was able to tolerate the demands normally encountered in routine work environments. AR 799-801, 815-817, 834-836, 850-852. In assigning weight to their opinions, the ALJ offered a similar rationale, noting that Drs. Eather and Fligstein (1) were experts in disability evaluation, (2) had the opportunity to review the longitudinal record, and (3) their opinions were consistent with the record as a whole. AR 644.

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"), (c)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752).

"In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831). In this case, the ALJ's rationale for rejecting the significant mental limitations assessed in the opinions of the six examining physicians is not supported by substantial evidence. The opinions of the State agency psychological consultants are not corroborated by the findings of any of the examining physicians, all of whom assessed Plaintiff as having a range of serious work-related mental limitations. Further, in rejecting the opinions of the examining physicians the ALJ has not set forth specific, legitimate reasons supported by substantial evidence.

For example, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting the opinion of Dr. Khaleeq. The ALJ found Dr. Khaleeq's opinion was based on self-reported physical symptoms outside his area of expertise. AR 651. Dr. Khaleeq is a medical doctor, having obtained his doctoral medical degree. See AR 1167. "Although a medical doctor's area of specialty is relevant, a physician with a doctoral medical degree (M.D.) is qualified to assess a claimant's physical functional limitations." *Fischer v. Colvin*, 2013 WL 5437571, *9 (W.D. Wash. Sept. 27, 2013). As Dr. Khaleeq underwent medical school training to obtain his M.D., further training in the specialty of psychiatry does not deprive Dr. Khaleeq of the capabilities he had as an M.D. prior to his specialized training. *See id*. Accordingly, the ALJ erred by finding Dr. Khaleeq's opinion regarding the effects of Plaintiff's physical pain was beyond the scope of his assessment.

In rejecting the opinions of examining physicians Ruddell, Khaleeq, and Lewis, the ALJ reasoned that important sections of their opinions were based on Plaintiff's self-reported

symptoms. AR 648, 651. According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v.Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

However, none of these examining physicians relied exclusively on Plaintiff's self-reported symptoms in assessing her mental limitations. All of them conducted objective testing such as clinical interviews and mental status examinations to support their opinions. *See Buck v. Berryhill*, 860 F.3d 1040, 1049-1050 (Clinical interviews and mental status interviews constitute "objective measures" that cannot be discounted as mere self-reporting.). Nor does partial reliance on an individual's self-reporting during a psychiatric examination necessarily invalidate an examining physician's opinion. *Buck*, 860 F.3d at 1050-1051 (citing *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987) ("Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry.").

Further, the ALJ rejected opinions from Drs. Thompson and Khaleeq because Plaintiff was an unreliable historian. AR 647, 651. The ALJ found that Plaintiff had made several inconsistent statements regarding her legal history, activities of daily living, alcohol usage, her impairments, and the circumstances surrounding the two murders she witnessed. AR 641-642. The ALJ also cited the opinion of State agency consultant Dr. Robinson, who suggested that Plaintiff had understated her legal history. AR 428, 641. The ALJ stated that these inconsistencies were not, "in and of themselves," relevant to the decision. AR 642. However, the ALJ disagreed with Dr. Lewis' categorization of these inconsistencies as "errors", instead reasoning that they were inconsistent statements that undermined the persuasiveness of Plaintiff's statements. AR 642. The ALJ concluded that it was the combination of these inconsistencies, rather than any one inconsistency in particular, that undermined Plaintiff's reliability as a historian, and which made it difficult for the examining physicians, relying partly on her self-reported symptoms, to accurately assess her limitations. AR 642.

As discussed above, none of the examining physicians relied exclusively on Plaintiff's self-reported symptoms when assessing her limitations. Further, Dr. Thompson specifically noted that Plaintiff was a reliable historian and stated that there were no inconsistencies in Plaintiff's statements and no evidence that Plaintiff was exaggerating her symptoms. AR 421, 425. Both Dr. Trowbridge and Dr. Lewis conducted a Rey Fifteen Item Test and found that Plaintiff was not malingering. AR 377, 559, 561.

There are any number of possible explanations for why Plaintiff offered differing accounts to physicians over a period of several years. Plaintiff has, for example, repeatedly demonstrated difficulties with memory and the aftereffects of post-traumatic stress disorder. AR 377, 426, 558, 1171. There is also a significant amount of objective evidence in the record

against which to compare Plaintiff's statements, including the mental status examinations, clinical interviews, and other psychological testing discussed above. With respect to the allegations concerning Plaintiff's past trauma, there is trial testimony concerning one of the murders Plaintiff witnessed. AR 310-323. As such, the ALJ's decision to reject the significant mental limitations assessed in the opinions of the six examining physicians is not supported by substantial evidence. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)) (The ALJ must explain why her own interpretations, rather than those of the doctors, are correct).

The ALJ failed to provide specific and legitimate reasons, supported by substantial evidence in the record, to discount the consistent opinions of the examining physicians. For example, as discussed above, the three reasons the ALJ provided for giving little weight to Dr. Khaleeq's opinion are not valid. Therefore, the ALJ erred. Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

The RFC and hypothetical questions posed to the VE may have contained additional limitations with proper consideration of the opinions of Dr. Ruddell, Dr. Khaleeq, Dr. Wingate, Dr. Lewis, Dr. Thompson, and Dr. Trowbridge. The RFC may have included several marked

limitations in work related mental functioning that may have changed the ultimate disability decision. As such, it is not harmless. *See Molina*, 674 F.3d at 1115.

**II.     Whether the ALJ properly discounted Plaintiff's subjective symptom testimony.**

Plaintiff also asserts the ALJ failed to provide any specific, clear, and convincing reasons to reject Plaintiff's subjective symptom testimony. Dkt. 17, pp. 16-17. Because the substance of Plaintiff's claim has already been addressed in the context of reviewing the ALJ's evaluation of the medical opinion evidence, the Court will not address it again here. Instead, the Court directs the ALJ to reweigh Plaintiff's subjective symptom testimony as necessary on remand.

**III.    Whether this case should be remanded for an award of benefits.**

Plaintiff argues this matter should be remanded with a direction to award benefits. *See* Dkt. 17, p. 18. The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

The Court has determined, on remand, the ALJ must re-evaluate the medical evidence. Therefore, there are outstanding issues which must be resolved and remand for further administrative proceedings is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 3rd day of May, 2019.

David W. Christel
United States Magistrate Judge